### PITKIN *against* PITKIN.

To authorize a set-off, the debts must be mutual; and to constitute mutuality, the debts must be due to and from the same persons in the same capacity.

The common law right of an executor to retain for a debt due to him from the estate of his testator, is inoperative, where such debt has been duly assigned to a third person.

Therefore, where on a submission, by *J.* and *E.*, surviving partners of the firm of *P. & Co.*, of their accounts, a sum of money was awarded to *J.* against *E.*, and a debt due from *S.* to the copartnership, was, by the award and consent of all concerned, set to *E.*; afterwards *S.* died; *E.* was appointed his executor, accepted the trust and administered, had assets, and procured an order of distribution; in an action brought by *J.* against *E.* on the award, wherein *E.* claimed the right to set off the debt demanded against the debt of *S.* so set to *E.*, on the ground that such last-mentioned debt was extinguished as against the estate of *S.*, and *J.* was personally liable for it; it was held, that this

Pitkin
*v.*
Pitkin.

result had not been effected, by any or all the facts stated; and consequently, the debts were not mutual and could not be set off.

THIS was an action of debt on an award of arbitrators for the sum of 301 dollars, 26 cents, in favour of *Joseph Pitkin* and *Edward Pitkin.* The defendant pleaded, that the plaintiff was indebted to him in the sum of 361 dollars, 24 cents, with interest; for that *Stephen Pitkin,* when living, was indebted to that amount to *Samuel Pitkin,* and the plaintiff, and the defendant, as surviving partners of the late firm of *Elisha Pitkin & Co.;* and the arbitrators, to whom all subjects of difference between the respective parties, were submitted, in adjusting the accounts of said partnership, transferred and set over to the defendant said debt, in part satisfaction of what he was entitled to, which was done with the consent of the parties; that the plaintiff was executor of the last will of *Stephen Pitkin,* and had assets sufficient to satisfy all debts and charges against that estate, on which he had fully administered, and, as executor of said *Stephen,* owed said debt of 361 dollars, 24 cents, to himself jointly with *Samuel Pitkin* and the defendant; and that thereby, and by the decision of said arbitrators, said debt became extinguished, satisfied and paid to the plaintiff, executor as aforesaid, and became and was due from the plaintiff, in his proper right, to the defendant; and upon these facts, together with the insolvency of the plaintiff, the defendant claimed a set-off. The plaintiff traversed the allegations of the plea; on which issue was joined.

The cause was tried at *Hartford, February* term, 1831, before *Peters,* J.

On the trial, the defendant claimed to have proved, that the plaintiff was executor of *Stephen Pitkin;* that the estate was sufficient to pay all the debts and charges against it; that the administration account was settled, by the court of probate, and an order of distribution was made; that the defendant became the purchaser of said debt of 361 dollars, 24 cents, having received the same with certain other debts in part of his share of the effects of *Elisha Pitkin & Co.,* by consent of the parties; and that he allowed that sum for said debts, and by consent of the arbitrators, transferred and set said debt to the defendant; that it was so charged in account, by the arbitrators, was the basis of the award, and was recognized by all the parties, and by the plaintiff, as executor of *Stephen Pitkin.*

The plaintiff claimed, that he could be liable for this debt only in his representative capacity; and so no set-off could be allowed.

The defendant claimed, that as the plaintiff was nominally one of the creditors of *Stephen Pitkin,* and also his executor, no suit would lie against him: and that as he had assets, it was to be presumed, that he had money in his hands, and the debt was due from him individually, or was extinguished by operation of law.

The judge instructed the jury, that the plaintiff having settled the estate of *Stephen Pitkin* as a solvent estate, and a distribution having been ordered, this was evidence that the plaintiff had retained to the amount of the debt in question, which was extinguished against the estate of *Stephen Pitkin,* and the plaintiff was liable personally therefor; and so the debt of the defendant and that of the plaintiff were mutual debts. (*a*)

The jury returned a verdict for the defendant; and the plaintiff moved for a new trial, for a misdirection.

*Hungerford* and *F. Parsons,* in support of the motion, contended, That the debts were not mutual and could not be set off. In the first place, the debt claimed to be set off, was due (if due at all) *from* the plaintiff, *as executor* of *Stephen Pitkin.* Secondly, it was due *to a copartnership,* consisting of the plaintiff, the defendant, and *Samuel Pitkin.* They cited *Staniforth* v. *Fellows,* 1 *Marsh.* 184. cited 3 *Stark. Ev.* 1312. *in notis. Miller* v. *The Receiver of the Franklin Bank,* 1 *Paige* 444. *Dale* & al. v. *Cooke,* 4 *Johns. Chan. Rep.* 11. 13. *Palmer* v. *Green* & al. 6 *Conn. Rep.* 14. 19. *Francis* v. *Rand,* 7 *Conn. Rep.* 221. 1 *Swift's Dig.* 449.

*N. Smith* and *Toucey,* contra, contended, That there was no want of mutuality. In the first place, upon the facts, the plaintiff was by law personally liable; the debt being by law extinguished, and the estate settled as solvent. The debt is *ipso facto* paid to him. *Fryer* v. *Gildridge, Hob.* 10. S. C. *Moor* 855. *Com. Dig. tit.* Administration. C. 1. 5 *Bac. Abr.* 688. (*Gwil.* ed.) *Wells* v. *Brockway,* in *U. S.* Circuit Court.

(*a*) Other questions were made and discussed; but the decision of this point rendered it unnecessary to consider them. It is, of course, unnecessary to state them here.

Secondly, the jury have found, that the plaintiff has the money in his hands.

WILLIAMS, J. The facts are briefly these. *Samuel, Joseph* and *Edward Pitkin,* surviving partners of *Elisha Pitkin & Co.,* submitted their accounts to arbitration. An award is made against *Edward,* the defendant, upon which this suit is brought. The defendant claims, that *Stephen Pitkin* owes *Elisha Pitkin & Co.* a debt, which, by the arbitrators, by consent of all persons interested, was set to him, the defendant; that the plaintiff is executor of *Stephen ;* has administered ; has assets ; has procured an order of distribution ; and that this debt is to be considered as due from *him,* and not from the estate of *Stephen Pitkin ;* that it is extinguished as against the estate ; and that so he has a right of set-off against the debt of the plaintiff.

That the debts must be mutual to authorize a set-off, is required by statute. To constitute mutuality, the debts must be due to and from the same persons in the same capacity. *Palmer* v. *Green* & al. 6 *Conn. Rep.* 14. *Francis* v. *Rand,* 7 *Conn. Rep.* 221. And those claims must be such, that the plaintiff can sue, and the defendant be sued, in their individual capacities. *Miller* v. *The Receiver of the Franklin Bank,* 1 *Paige* 444.

If the debt claimed to be set off, is, by operation of law, extinguished, so as no longer to be a debt against the estate of *Stephen Pitkin,* the charge is correct. But the party who claims this, is bound to shew when and how it was effected. If it is claimed, that this was the effect of the award, it may be asked, why did not the arbitrators make the set-off ? If it be said, that although the arbitrators did not in form make it, yet such is the legal result of what they have done ; it may be asked, when did this take place ? Immediately upon the publication of the award ? It does not appear, that it was then ascertained, that there were assets in the hands of the executor. Will it be said, that the debt became extinguished against the estate of *Stephen Pitkin,* the moment it was ascertained, that there were assets in the hands of his executor, or on the obtaining an order of distribution ? The consequence of such a principle must be, that if the executor should be removed or die, the estate of *Stephen Pitkin* must be discharged from the payment of this debt, and the defendant, if his claim surmounts the plaintiff's, must look only to *Joseph Pitkin,* an insolvent ; and

although, in this case, the injury might not be great, (as the claims of the parties are nearly equal) it is apparent, that such a principle, once adopted, would be productive of serious evils. For, if *Joseph* had no debt against *Edward*, this principle of extinguishment would exonerate the estate of *Stephen*, and discharge the surety of *Joseph*; and then, by substituting a technical payment for an actual payment, *Edward* might be deprived of the benefit of those securities the law has given for the protection of the creditors of a deceased person against the insolvency of his representatives.

Again, if the executor of *Stephen Pitkin* is personally liable for this debt, then it follows, that in every case where there are assets, and distribution is ordered, the executor or administrator is personally liable for a debt claimed to be due the estate. Nor can I see but that, upon the same principle, he must be liable, if he has assets, whether distribution is ordered or not; and the consequence will be, that his representative capacity is lost sight of. But such claims are against the estate of the deceased. As such, they must be exhibited; as such, established; and as such, recovered. Any other principle would subject not only executors, but all trustees, to try claims against the estate they represent, as individuals, and subject them personally to executions, in the first instance; and thus practically abolish all difference between claims against them as representatives of others and as individuals.

It is said, that in *Wells* v. *Brockway*, (a) the circuit court of the *United States* decided, that in a suit for a legacy, where assets were shewn, the executor was personally liable. *That,* however, was never a debt against the estate, but a charge to the executor to pay, and which, it was held, he became personally bound to pay, having accepted the trust and having assets. The court, therefore, held, that the executor could not set off a debt, which the estate had against the plaintiff, against that claim for the legacy. But will it be believed, that the court intended to say, that if, in that case, *Wells's* claim had been on a note against the estate, a note which the estate had against him, could not be set off? And yet the claim of the defendant must go that length, on the ground that the ex-

(a) Decided at *Hartford, September,* 1829, cor. *Thompson* and *Bristol,* Js.

VOL. VIII. 42

*Hartford,* June, 1831.

Pitkin
v.
Pitkin.

ecutor claimed the debt of *Wells* in his representative char-acter. But *Wells* claimed of him in his individual character.

It was further urged, that as the plaintiff was one of the creditors of *Stephen Pitkin,* and is also executor of *Stephen Pitkin,* no suit can be brought for this debt; and therefore, the principle of retainer by an executor must be applied. And if it be so, that no suit can be sustained for this debt, there is force in the argument. The defendant, however, claims, that though this debt was due originally to *Elisha Pitkin* & Co., it is now, by assignment, due to him. Of course, if he can sustain a suit, the argument fails. And the superior court has decided, that where the promisee of a note not negotiable, had assigned it, and made the maker his executor, the assignee, after his death, might sustain an action *at law* against the maker. *Hoyt* v. *Maltby,* cited by *Smith, arguendo,* 1 *Day* 226. If that decision is to be considered as law, *Edward Pitkin* can now sustain his action at law against the executor of *Stephen Pitkin* for this debt. But if that case should not be re-cognized, by this Court, it would be merely because the remedy is in chancery. No embarrassment, therefore, can arise from the fact that the executor is both creditor and debtor.

The case of *Fryer* v. *Gildridge, Hob.* 10. (S. C. *Moor* 855.) has been much relied on, in which it was held, that where an obligor made his wife executor, she being also executor of the obligee, after his death, a surviving obligor could not be sued; first, because when the obligor made the obligee his executor, the action was *suspended,* and being once suspended and a personal action, it was therefore extinct; and secondly, as the obligor left assets, and the executor of the obligee was also his executor, the debtor was presently satisfied by way of retain-er. Without inquiring how far this doctrine, that a suspen-sion of a remedy in personal actions, is an extinguishment of it, or how far the *English* practice of retaining by an executor, is to be adopted in this state, it seems to me, that the case from *Hobart* is not applicable to the case before the Court.

From the defendant's own shewing, this debt, when it was set over to him, was considered, by all parties, as a debt due from the estate of *Stephen Pitkin,* and not from *Joseph Pitkin.* As such, the defendant claims, that it was set over to him; as such, he received it. If this debt had then become a debt due from the plaintiff to the defendant, it should have been deduct-ed, by the arbitrators, from the debts found due to *Joseph*

from *Edward*; and no sum could have been awarded as due from *Edward* to *Joseph*. And after the award was made, this debt, if legally due to *Joseph, Samuel* and *Edward*, was equitably due only to *Edward*. Of course, *Joseph* had no right to discharge it; no right to collect it; nor could he pay it to any of the firm of *Elisha Pitkin* & Co., except *Edward*.

All the cases which have been decided under our garnishee law, as to the right of property in a debt assigned, and all those cases where suits have been brought for taking and giving a discharge, after notice of an assignment of a debt, shew this. *St. John* v. *Smith,* 1 *Root* 156. *Forbes* v. *Brewster,* 1 *Root* 234. *Russell* v. *Cornwell,* 2 *Root* 122. *Coleman* v. *Wolcott,* 4 *Day* 28. *Magill* v. *Lyman,* 6 *Conn. Rep.* 59.

The common law doctrine of an executor's retaining for his own debt, is founded upon the idea, that it is absurd and incongruous that he should sue himself, or that the same hand should pay and receive the same debt; and as he must be paid first, who sues first, the executor, as he cannot sue at all, must lose his debt, when the estate is insolvent, without he has the power of retaining. *Toll. Exec.* 230. But this privilege a court of equity will restrain, when perverted to fraudulent purposes. *Toll. Exec.* 232. Of course, as *Joseph Pitkin* here was only one of a number of nominal creditors, and *Edward Pitkin* was the real creditor, and might, in a court of equity or a court of law, sustain a suit therefor, it seems to me to be a perversion of this privilege of retaining for a debt due to an executor, to say, that *Joseph Pitkin* could retain for this debt due to *Edward*. No analogous case has been adduced; none, I think, can be. This power, like the privilege of an infant, was given as a shield, not as a sword. And were it decided, that an executor could retain for a debt, which he has assigned, it is apparent, that this privilege might become a weapon of fraud and injustice.

I am, therefore, of opinion, that there must be a new trial.

HOSMER, Ch. J. and DAGGETT, J. were of the same opinion.

PETERS, J. dissented; and BISSELL, J. was absent.

New trial to be granted.